Filed 3/28/25  In re B.E. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re B.E. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, <br><br>     Plaintiff and Respondent, <br><br>       v. <br><br> T.E. et al., <br><br>     Defendants and Appellants. | G064106, G063693 <br><br> (Super. Ct. Nos. DP024000-004, 22DP1048A) <br><br> ORDER MODIFYING OPINION AND DENIAL OF PETITION FOR REHEARING |

      It is ordered that the opinion filed herein on March 12, 2025, be modified as follows:

On page 1, first paragraph, after the word "Affirmed" it is modified to read as follows:

"Affirmed and dismissed in part."

In the Disposition, on page 10, after the first sentence, add as the second sentence: "The appeal in case number G063693 is dismissed."

At the end of the sentence added to the Disposition by the previous paragraph, add as footnote 2 the following footnote:

[2] In case number G063693, Father appealed from an interim review order in which the trial court found that the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; ICWA) did not apply. Father argued that SSA had not performed an adequate investigation. While that appeal was pending, proceedings below continued and SSA performed a more thorough ICWA investigation. It then filed a motion for judicial notice of the filings and court findings related to that ongoing investigation. We grant that request for judicial notice, which was unopposed. SSA then moved to dismiss Father's earlier appeal as moot, arguing it had had by then performed the investigation Father claimed was required under ICWA, and thus we could not grant any effective relief. Father did not oppose the motion to dismiss. Instead, he moved to consolidate case number G063693 with his appeal from the order terminating parental rights (case No. G064106), which we granted, and which we resolve in this opinion. However, Father did not raise any ICWA issues in his subsequent briefing in appeal G064106. By failing to oppose the motion to dismiss, and by failing to address SSA's continued ICWA investigation and the court's later findings, we deem his ICWA arguments to be forfeited and grant the motion to dismiss case number G063693.

The modification does effect a change in the judgment. (See Cal. Rules of Court, rule 8.264, subd. (c)(2).)

The petition for rehearing is DENIED

SANCHEZ, J.

WE CONCUR:

O'LEARY, P. J.

MOORE, J.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re B.E. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v. T.E. et al., Defendants and Appellants. | G064106, G063693 (Super. Ct. Nos. DP024000-004, 22DP1048A) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Robert Goodkin, Judge. Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant (Father).

The Law Office of Richard L. Knight and Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant (Mother).

Leon J. Page, County Counsel, Debbie Torez and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minors.

\*     \*     \*

Father (and Mother through a joinder) appeals from an order terminating his parental rights and selecting adoption as the permanent plan for his two children Br.E. and Bl.E. He raises two issues on appeal. First, he contends it was error for the court to order no visitation after terminating reunification services. We conclude the court's finding that such visitation would have been detrimental was supported by substantial evidence, and thus no visitation was required. Second, he contends it was error to select adoption as the permanent plan because the prospective adoptive parent (the paternal grandmother) had a spouse, and there was no evidence in the record that the spouse had consented to the adoption pursuant to Family Code section 8603. We conclude that argument was forfeited by failing to raise it in the trial court. Accordingly, we affirm.

## FACTS

### I.

#### THE PETITION AND JURISDICTIONAL HEARING

In September 2022, SSA filed a petition against Mother and Father alleging they had provided their two children, Br.E (age 9) and Bl.E (age 7) an unstable home environment and had exposed them to criminal activity. Mother and Father had been arrested and incarcerated for car theft, and there was no one available to care for the children. The family was

homeless at the time, living out of their (stolen) vehicle. The parents had a history of domestic violence, which had resulted in a previous dependency case involving Br.E. Father had a history of anger management, mental health issues, and unresolved substance abuse issues. Father's substance abuse issues had led to a dependency case involving a paternal half-sibling in which Father failed to reunify. Mother also had an unresolved substance abuse problem. Both had a criminal history, with father's being extensive.

The court detained the children. Shortly after, the children were placed with the paternal grandmother in Riverside County where they remained for the duration of the proceeding. The court later sustained the petition, exercised jurisdiction, and granted the parents reunification services.

## II.

### THE REUNIFICATION PERIOD

SSA interviewed the caregiver/paternal grandmother in late November 2022. The grandmother reported that the children were experiencing bed wetting problems and that Bl.E (the younger sibling) was struggling with aggressive and defiant behaviors. However, those behaviors decreased over time. Br.E. was apparently suffering from nightmares. Otherwise, the children were doing well in the placement. Both children reported feeling safe and enjoyed living with their grandmother.

In late December 2022, SSA made contact with Mother. Mother and Father were verbally aggressive with the social worker, demanding to know why the case had not been transferred to Riverside County where the parents lived. The parents refused to consent to a home assessment visit at their residence.

Over the course of the reunification period, both children continued to experience some behavioral issues in school. Bl.E., who had the more severe problems, had experienced significant improvement. Bl.E.'s teacher noted that his improvement corresponded with the techniques the grandmother was implementing in the home, but that Bl.E.'s behavior worsened on days following a weekend visit with his parents.

Both parents claimed to live in the City of Palm Desert, though neither would consent to a home assessment. Neither parent participated in any of the services or drug testing required by their case plan.

With regard to visitation, beginning in November 2022, the paternal grandmother refused to supervise visits as a result of the parents' behavior. The parents visited sporadically with the children. As of January 2023, the parents had not called to speak with the children for "months." The children had not asked to call them either. On January 15, 2023, the parents were a no-show for a visitation at a park, which had a significant negative impact on the children's morale. Two more visits were cancelled in January 2023 as a result of the parents failing to confirm by the day of the visit. Two more visits were cancelled in February 2023 for the same reason. Two other February visits were cancelled due to a lack of an available supervisor. The parents were asked to identify anyone willing to supervise visitation but did not identify anyone. The parents cancelled three more visits in March 2023, including one visit that was cancelled when the parents again failed to show up. The pattern continued in April 2023, with the caregiver reporting that the children were "truly disappointed" by the parents' cancellations. The pattern of sporadic cancellations continued in May, June, and July 2023. The caregiver reported that the sporadic visitation and cancellations was causing the children stress.

4

On April 30, 2023, SSA made an unannounced visit at the address the parents provided as their residence in the City of Palm Desert. The person they found residing there reported that no one by the parents' name lived there or had lived there recently (since at least 2018).

In June 2023, SSA filed an ex parte request to have the grandmother appointed as the children's Educational Rights holder. This was due to the parents not being responsive to requests from the school, the caregiver, and SSA.

On June 1, 2023, Father was arrested by the La Quinta Police Department on felony charges of grand theft for attempting to steal $1,226 worth of merchandise from a Target store.

In late June 2023, Father made a verbal request to a social worker to have visits in Orange County rather than Riverside County.

In July 2023, Bl.E.'s therapist reported that he was feeling sadness and anger toward the parents as a result of their cancellations. Bl.E. expressed not wanting to participate in visitation. Br.E.'s therapist also reported Br.E. working through anger issues as a result of the parents' visitation, and Br.E. also did not want to continue visitation.

Beginning on July 16, 2023, and thereafter, the children refused to participate in visitation.

As of August 2023, SSA's recommendation was to terminate reunification services and set a permanency hearing pursuant to Welfare and Institutions Code section 366.26. On August 8, 2023, SSA filed a motion under Welfare and Institutions Code section 388 to change the court's order to terminate reunification services. The motion was based on the parent's inconsistent visitation, the children's refusal to visit, the parent's refusal to participate in services, and the new criminal charges. SSA also requested

that visitation be reduced to once per month, occur only on the recommendation of the children's therapist, and that the children not be forced to visit the parents.

In early September 2023, Mother was arrested for vehicle theft.

Both children's therapists had attempted to make progress on discussing visitation, but both children continued to not be open to discussing the topic, standing firm in their desire not to see their parents. Br.E.'s therapist noted that he was experiencing anxiety as a result of the continued requests that he attend visitation.

On September 2, 2023, the children finally agreed to participate in a visit with the parents. The parents no showed. Afterward, the children resumed their pattern of refusing to participate.

On October 6, 2023, Father was arrested on various bench warrants.

In October 2023, SSA conducted an adoptability analysis of both children. SSA concluded that the children "would be difficult to place" due to their behavior and age, but that they are both specifically adoptable as their grandmother desired to provide them a permanent home.

In December 2023, at what was deemed a 12–month review hearing, the court terminated reunification services and ordered a 366.26 (.26) hearing. Upon a motion by minor's counsel, the court found it would be detrimental to continue visitation. SSA was ordered to contact the children's therapists once per month to inquire if resuming visitation would be in the children's interest, and, if so, to submit an ex parte to the court.

In January 2024, the grandmother reported that her husband has been taking a more active role in supporting her with Bl.E. Bl.E. was reportedly highly receptive to the husband and looked up to him.

The .26 hearing took place in June 2024. The court found it likely that the children would be adopted. The court found them to be both generally and specifically adoptable. Accordingly, the court terminated Mother and Father's parental rights. The court ordered adoption as the permanent plan.

Mother and Father appealed.

## DISCUSSION

Father (and Mother through her joinder) raises two issues on appeal. First, he contends the court erred in denying visitation after reunification services were terminated, contending that the court should have instead ordered therapeutic visits. Second, he contends there was no substantial evidence that the children were likely to be adopted. We address each contention in turn.

## I.

### THE COURT'S ORDER DENYING VISITATION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE

Relying on *In re Hunter S.* (2006) 142 Cal.App.4th 1497 (*Hunter S.*), Father contends the court erred in not ordering visitation after reunification services were terminated. The general rule as to visitation post-reunification is set forth in section 366.21, subdivision (h), which states, "The court shall continue to permit the parent or legal guardian to visit the child pending the [.26] hearing unless it finds that visitation would be detrimental to the child."

The facts of *Hunter S.* are in many ways similar to our facts. There, the minor grew hurt and disillusioned by his mother, was taken in by a grandparent, and eventually steadfastly refused to have any more visitation with his mother. (*Hunter S., supra,* 142 Cal.App.4th at pp. 1501-

7

1502.) When the court terminated reunification services, it ordered visitation "as can be arranged" through the minor's therapist. (*Id.* at p. 1501.) The *Hunter S.* court held this was error, stating, "*Unless the juvenile court finds it would be detrimental to the child*, visitation remains a pivotal component of the dependency scheme even after family reunification services are terminated, and the court may not delegate discretion over whether visits occur to a third person." (*Id.* at p. 1504 (Italics added).) There, the court held that the trial court had essentially delegated authority to the minor. (*Id.* at p. 1505.)

As our italics above foreshadow, there is a very clear distinction between *Hunter S.* and the present case: here, the court found that visitation would be detrimental. Father has not made any argument that the court's finding of detriment was not supported by substantial evidence. Indeed, there was ample evidence from the children's therapists that the issue of visitation was causing significant anxiety to the children. And that was also clear on the many occasions when the social worker tried to bring the subject up with the children, which would result in some physical manifestation of anxiety such as hiding under a blanket or responding in a "rough/deeper 'angry type voice'" and punching a piece of cardboard while saying "No." This evidence was sufficient to support a finding of detriment, and thus the court had no duty to offer the parents continued visitation.

II.

FATHER FORFEITED HIS OBJECTION TO ADOPTION

Father raises a single objection to the court's finding that the minors are likely to be adopted: he contends there was no evidence that grandmother's husband had consented to the adoption. Family Code section 8603, subdivision (a), states, "A married person, not lawfully separated from

the person's spouse, shall not adopt a child without the consent of the spouse, provided that the spouse is capable of giving that consent."

Father has forfeited this argument because he did not raise it in the trial court. "Having not raised the legal impediment question in the trial court, [Father] failed to properly preserve for appellate purposes [his] claim of trial court error. [Citations.] [He] also did not object to the department's preliminary assessment as inadequate in this regard and thus forfeited the opportunity to now place the blame for the silent record on the department." (*In re G.M.* (2010) 181 Cal.App.4th 552, 563-564.) Forfeiture is particularly apt here because the silence of the record regarding the husband's consent could have been quickly and easily rectified at the trial court level. We will not delay the children's entitlement to permanency to address an issue that could and should have been raised in the first instance in the trial court.

DISPOSITION[1]

The judgment is affirmed.


SANCHEZ, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.

---

[1] Mother's request that we take judicial notice of her opening brief in a prior appeal (Case No. G061994) is granted.